# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BEYEL BROTHERS, INC., PORT
CANAVERAL MAINTENANCE &
FABRICATION, INC.,**

                      **Plaintiffs,**

**-vs-**                                              **Case No.  6:06-cv-752-Orl-31JGG**

**CANAVERAL PORT AUTHORITY,**

                      **Defendant.**

_____

# ORDER

      This matter comes before the Court on the Motion to Dismiss Amended Complaint (Doc.

34) filed by the Defendant, Canaveral Port Authority ("CPA") and the Memorandum of Law in

Opposition (Doc. 35) filed by the Plaintiffs, Beyel Brothers, Inc. ("Beyel") and Port Canaveral

Maintenance and Fabrication, Inc. ("Canaveral Maintenance").

## I.    Background

      The following facts, taken from the Amended Complaint (Doc. 27), are assumed to be true

for purposes of resolving the instant motion: Beyel provides maritime services such as ship repair

and loading on property it licensed from the CPA within the port of Port Canaveral, Florida.

Canaveral Maintenance provides similar services on land it leases from the CPA within the same

port.  In May 2006, Immigration and Customs Enforcement agents discovered and arrested an

undocumented alien living on a Beyel vessel within a secured area of the port.[1]  In response, the

_____

        [1]It appears that the alien had been a member of the ship's crew.

local Coast Guard Commander issued an order citing Beyel with violations of certain maritime security regulations and suspending certain of its maritime operations within the port.  The next day, the CPA confiscated the security badges of all Beyel employees and subcontractors and installed locks on all gates and accesses to the property licensed by Beyel, as well as the property leased by Canaveral Maintenance.

On June 2, 2006, Beyel and Canaveral Maintenance filed a complaint against the CPA in this Court, contending that the CPA had breached its contracts with them and converted their property, as well as defaming Beyel in a subsequent newspaper interview and interfering with its business relationships. In the original complaint, the Plaintiffs contended that this Court possessed both admiralty and federal question jurisdiction over the dispute.  (Doc. 1 at 1-2).  In response to jurisdictional concerns raised by the CPA and the this Court, the Plaintiffs on July 13, 2006 filed an amended complaint (Doc. 27).  Again claiming that this Court possesses both admiralty and federal question jurisdiction, the Plaintiffs allege that the CPA breached its contracts with Beyel (Count I) and Canaveral Maintenance (Count VI), and raise a Section 1983 claim that the CPA violated Beyel's civil rights under the Dormant Commerce Clause (Count II).   Beyel also raises three purely state law claims – conversion (Count III), defamation (Count IV), and intentional interference with business relationships (Count V).

II.     **Standards**

A.     **42 U.S.C. 1983 and the Commerce Clause**

Section 1983 provides, in relevant part, that every person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  The Commerce Clause, found at Article I, Section 8, Clause 3 of the United States Constitution, empowers Congress to regulate "Commerce with foreign Nations, and among the several States, and with the Indian Tribes".  Commerce Clause claims may be brought under Section 1983. *Dennis v. Higgins*, 498 U.S. 439, 451 (1991).

Although the Commerce Clause speaks literally only to the powers of Congress, it is well settled that is has a "dormant" or "negative" aspect that serves as a substantive restriction on permissible state regulation of interstate commerce. *Bainbridge v. Turner*, 311 F.3d 1104, 1108 (11th Cir. 2002).  This negative aspect prohibits "economic protectionism – that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id.* (internal quotation omitted).  It also prevents states from erecting barriers to the free flow of interstate commerce. *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 440 (1979).  However, state legislation designed to serve legitimate state interests that is applied without discriminating against interstate commerce does not violate the Commerce Clause even though it affects interstate commerce. *Id.*

III.    **Analysis**

A.    **Admiralty jurisdiction**

By statute, District Courts possess original jurisdiction over any "civil case of admiralty or maritime jurisdiction."  28 U.S.C. § 1333.  Admiralty jurisdiction is designed to protect maritime commerce. *Exxon Corp. v. Gulf Central Lines, Inc.*, 500 U.S. 603, 611-12 (1991).  The Plaintiffs contend that the contracts between themselves are "maritime contracts" and therefore a case

involving their alleged breach falls within this Court's admiralty or maritime jurisdiction.  "In order for a contract to fall within the federal admiralty jurisdiction, it must be wholly maritime in nature, or its non-maritime elements must be either insignificant or separable without prejudice to either party."  *Inbesa America, Inc. v. M/V Anglia*, 134 F.3d 1035, 1036 (11th Cir. 1998).  It is the character of the work to be performed under a contract that determines whether it is maritime, not the identity of the parties to the contract.  *Ambassador Factors v. Rhein-, Maas-, und See-Schiffahrtskontor GMBH (Vormals Sanara Reedereikonto GMBH)*, 105 F.3d 1397, 1399 (11th 1997).  For example, a contract to charter a ship would be subject to admiralty jurisdiction, while a contract to purchase the same ship would not.  *The Ada*, 250 F. 194, 195-96 (2d Cir. 1918).

The Plaintiffs argue that both contracts – the license to Beyel (Doc. 25-5) and the lease to Canaveral Maintenance (Doc. 25-2, 25-3, and 25-4) – fall within the Court's admiralty jurisdiction as maritime contracts.  They argue that certain provisions of the contracts, such as statements that the land will be used to moor tugboats, and requirements that only tugboats (and not larger vessels) will be tied to the sites' bulkhead cleats, demonstrate that the contracts' maritime character.  (Doc. 35 at 5).  If the CPA had contracted to provide tugboat mooring services, or something of that nature, the Plaintiffs might have an argument.  At their heart, however, both of these contracts are simply land use contracts.  The parties understood that maritime activity would be performed on the land, and the contracts contained language intended to regulate that activity.  But such activity is peripheral to the central purpose of these contracts.  Applying the analysis of *Inbesa America*, the non-maritime elements of these contracts are central rather than insignificant.  These are not maritime contracts, and they therefore do not fall within this Court's admiralty jurisdiction.

## B.    Federal Question jurisdiction

Pursuant to 28 U.S.C. § 1331, this Court possesses federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  The Plaintiffs offer two arguments that the Court possesses federal question jurisdiction here.

First, they claim that they have alleged a cause of action under the Dormant Commerce Clause and Section 1983, because of their allegations that the CPA's confiscation of badges and changing of locks "unduly burdened or unreasonably interfered with interstate and international commerce" by, *inter alia*, preventing other vessel owners from using their tug, barge and crane services.  (Doc. 27 at 8-9).  However, the Amended Complaint fails to state a claim for a violation of the dormant Commerce Clause.  The only regulatory statute or scheme even arguably at issue would be the federal maritime security regulations – 33 CFR Part 105 – which the Coast Guard Commander charged Beyel with violating and which the CPA allegedly used as a basis for confiscating Beyel's badges.  (Doc. 35 at 9).  Further, there is no suggestion that those regulations (or any others) were applied in a way that discriminated against interstate commerce, particularly given that Beyel is a Florida corporation.  (Doc. 27 at 2).  Count II must be dismissed.

Beyel's second argument is that the instant action arises under the Maritime Transportation Security Act of 2002 (the "MTSA") and the international treaty known as the Safety of Life at Sea ("SOLAS") Convention, which the MTSA incorporates.  (Doc. 35 at 10).  But Beyel is not proceeding under either the MTSA or the SOLAS Convention.  Rather, Beyel claims that the CPA will rely on those statutes and their implementing regulations to justify its actions.  (Doc. 35 at 11).  But a case arises under federal law "only in those cases where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief

necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-26 (1983). CPA's defense may depend upon federal law, but Beyel's right to relief does not.

Because the Court does not possess either admiralty jurisdiction or federal question jurisdiction over any part of this dispute, it may not exercise supplemental jurisdiction over the Plaintiffs' state law claims.[2]  In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss Amended Complaint (Doc. 34) filed by Defendant Canaveral Port Authority is **GRANTED.**  Count II is **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(6), and the remainder of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1).

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 5, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[2]Even if Court possessed federal question jurisdiction in this case, it would decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(2), on the ground that they substantially predominate over the claim over which the Court has original jurisdiction.